RECEIVED
MAR 2 3 2007
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| JM Tull Metals Co. Inc. | Civil Action No. 05-329 consolidated w/ 05-440 |
| versus | |
| Robert T. Cline | Judge Tucker L. Melançon |
| | Magistrate Judge C. Michael Hill |

## MEMORANDUM RULING

Before the Court is plaintiff, J.M. Tull Metals, and consolidated-defendant, Ryerson Tull's Motion for Summary Judgment [Rec. Doc. 29], defendant, Robert Cline's Memorandum in Opposition thereto [Rec. Doc. 36], and J.M. Tull Metals and Ryerson Tull's Reply Memorandum [Rec. Doc. ]; as well as Cline's Motion for Summary Judgment [Rec. Doc. 30] and J.M. Tull Metals and Ryerson Tull's Memorandum in Opposition thereto [Rec. Doc. 34]. For the reasons set out below, J.M. Tull Metals and Ryerson Tull's Motion [Rec. Doc. 29] will be GRANTED and defendant's Motion [Rec. Doc. 30] will be DENIED.

## I. FACTUAL BACKGROUND

Defendant Robert Cline was the CEO and sole shareholder of Body Masters Sport Industries, Inc. ("Body Masters") (*Complaint,* para. 5). Plaintiff J.M. Tull Metals Company, Inc. ("Tull") supplied and sold on open account steel and other metals to Body Masters. (*Id.* at 6). According to Tull, "[o]ver a period of more than twenty years, in order to induce Tull to supply Body Masters with metals on open account, Cline executed a number of continuing personal guarantees." (*Tull's Motion,* p. 2). On November 30, 1984,

1

Cline provided Tull with a letter of guaranty which stated, "I [Cline] hereby guarantee to personally stand good for any payments which Body Masters Sports Industry, Inc. may default on with you during the course and scope of various business transactions." (*Id.* at 9, attached Exhibit 3). On December 11, 1984, Cline executed a continuing personal guaranty that "unconditionally guarantee(s)) the full and prompt payment when due" of Body Master's debt to Tull. (*Id.* at 7, attached Exhibit 1). Cline executed another personal guaranty guaranteeing "full and prompt payment when due" of Body Master's debt to Tull on March 18, 1991. (*Id.* at 8, attached Exhibit 2).

On or about January 11, 2005, Body Masters filed for Chapter 11 bankruptcy reorganization in the United States Bankruptcy Court, Western District of Louisiana. [*In re Body Masters Sports Industries, Inc.,* Case No. 05-50059]. At that time, Body Masters allegedly owed Cline $747, 758.05 in unpaid invoices dating from September 28, 2004 until January 24, 2005, which remains unpaid. (*Complaint* at 13; see *Tull's Opposition Exhibit F*). Tull filed a proof of claim in the bankruptcy court in the amount of $747, 758.05, and Body Masters and Tull sought approval of a settlement agreement by the bankruptcy court that included a stipulation by Body Masters to the allowance of Tull Metals' claim in full. (*Tulls's Opposition,* p. 3, *Exhibit E* and *F*). Additionally, Body Masters listed Ryerson Tull as an unsecured creditor in the bankruptcy proceeding. (*Cline's Opposition,* p.2). Then on January 25, 2005, JM Tull made written demand on Cline to honor the previously executed personal guarantees and pay Body Master's debt. (*Complaint* at 14, attached Exhibit 4).

On February 4, 2005, Cline filed suit for declaratory judgment in the Fifteenth

Judicial District Court, Parish of Acadia, State of Louisiana, against "all parties, assigns of parties, third-party beneficiaries or purported parties to a guaranty agreement or agreements dated March 18, 2001," naming J.M. Tull Metals, Ryerson Tull, Inc. ("Ryerson"), Body Masters and Ray Boudreaux as defendants[1] [Rec. Doc. 1, *Civ No. 05-440*]. The Petition for Declaratory Judgment was allegedly filed in response to the demand made on Cline by Tull, through the letter dated January 25, 2005, to "perform under the guaranty." (*Id.* at para. 3). Cline alleged that if he was found to be a "party to the guaranty" then defendants Boudreaux and Body Masters were "joint and solidary obligors." Ray Boudreaux was president of Body Masters. Cline denied signing any guaranty or having ever intended to guaranty the debts of Body Masters and sought judgment declaring the "respective rights of the parties in regard to the guaranty, declaring the guaranty unenforceable against plaintiff, and granting all further appropriate relief in the premises." (*Id.* at paras. 4, 8, 11).

A few days later, on February 22, 2005, Tull filed the instant suit against Cline and Body Masters, alleging that Cline is liable under a series of personal guarantees executed in favor of Tull Metals to guarantee the repayment of debt owed to Tull by Body Masters.

---

[1] Tull argues that Cline named Body Masters and Ray Boudreaux as defendants in the state court proceeding in "effort to prevent this Court from having diversity jurisdiction, and for no apparent reason. During the August 23, 2005 hearing on the Motion to Remand, it was ultimately held that the joinder of the named defendants did not defeat diversity jurisdiction, and Cline was instructed to file a brief as to why the non-diverse defendants should not be dismissed by September 7, 2005 [Rec. Doc. 20, 05-440]. Cline failed to meet this deadline and on March 1, 2007, Cline was again ordered to file a brief as to why the non diverse (consolidated) defendants should not be dismissed by March 16, 2007 [Rec. Doc. 54, 05-329]. On March 16, 2007, Cline filed a brief in response [Rec. Doc. 55, 05-329] stating that he did not object to the dismissal of the non-diverse defendants. Therefore, Ray Boudreaux and Body Masters will be dismissed.

Plaintiff seeks to recover the amount allegedly owed - $747,758.05 - with interest from the date of each unpaid invoice, as well as attorney fees and costs. Cline's declaratory judgment action was removed to the United States District Court, Lafayette Division, Western District of Louisiana on March 10, 2005 [Rec. Docs. 2&4], and the two actions were consolidated in this Court on September 8, 2005 [Rec. Doc. 11].

Tull, as plaintiff and as consolidated defendant, with Ryerson, as consolidated defendant,[2] move for summary judgment against defendant/consolidated plaintiff Cline, requesting a money judgment for the $747, 758.05 allegedly owed to Tull, upholding and enforcing Cline's personal guarantee of Body Masters' debt to Tull, and dismissing Cline's claims against Tull and Ryerson with prejudice. (*Tull's Motion*).

Cline also moves for summary judgment arguing that neither he nor Body Masters owe a debt to Tull Metals, but that the debt at issue is in fact owed to Ryerson Tull. (*Cline's Memorandum,* p.1)."The debt sued upon here is a Ryerson Tull, rather than a J.M. Tull debt. After

---

[2] Ryerson Tull, Inc. first appeared as a defendant in Cline's declaratory judgment action (*Cline's Complaint,* Rec. Doc. 1 in 05-440). The complaint states that J.M. Tull Metals Company, Inc. is a subsidiary of Ryerson Tull, Inc. (*Id.* at 3). Tull affirms that it is an "operating subsidiary of Ryerson Tull, a holding company" and that it was the only entity in the Ryerson Tull family of companies that supplied metal to Body Masters Sport Industries, Inc during the period of September 28, 2004 until January 24, 2005. (*Tull's Motion,* p.3). However, in Cline's Response to Tull & Ryersons Statement of Uncontested Facts, Cline asserts that "Ryeron Tull and J.M. Tull are separate and distinct corporations," and posits that Body Masters may be indebted to Ryerson but is not to Tull (*Cline's Statement of Material Facts*). As such, it is disputed whether Ryerson replaced Tull as the party in business with Body Masters after 2001 or whether Ryerson appeared in the business transactions between Body Masters and Tull merely as the passive holding company and sole shareholder of Tull.

2001, J.M. Tull did not supply steel and other metals to Body Masters." (*Cline's Statement of Material Facts*). Cline argues that because the debt is owed to Ryerson, *assuming arguendo* that such a personal guarantee had been executed in favor of Tull Metals, the personal guarantee could not be enforced by Ryerson to recover its own debt because though affiliated, Tull and Ryerson are separate and distinct corporate entities. (*Id.* at 2). Cline posits, "[B]ecause no money is owed to the entity holding the guarantee (Tull) and because the entity owed money (Ryerson) has no personal guarantee, summary judgment is appropriate against both." (*Cline's Motion*, p. 7).

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994)(en banc). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however,

the burden shifts to the non-moving party to show that there is a genuine issue for trial.[3] *Id.* at 322-23.

Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.*, 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144. 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson*, 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.*, 958 F.2d 95, 97 (5th Cir.1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.1990).

---

[3] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322.

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

### III. LAW & ANALYSIS

It is not disputed that Body Masters accrued the debt at issue from September 28, 2004 until January 24, 2005. The fact issue in dispute, as raised in Cline's Motion for Summary Judgment, is whether the debt is owed to Tull or is actually owed to Ryerson. Cline claims that after 2001, Body Masters no longer engaged in business with J.M. Tull but purchased materials from Ryerson Tull, as a separate and distinct legal entity, instead. (*Cline's Statement of Material Facts, #4*). Cline states that Body Masters paid for all materials it purchased from Tull but acknowledges that Body Masters failed to pay for all of the material purchased from Ryerson. (*Id.* at 3). He claims that "the unpaid invoices due from Body Masters that allegedly form the basis for Tull Metal's claims under personal guarantees are invoices from Ryerson Tull, which invoices are shown on monthly statements of account sent to Body Masters by Ryerson Tull." (*Id.*, at 10).

Cline opposes Tull's allegation that Ryerson was merely a passive parent holding company of J.M. Tull which never sold metal products. Cline offers as supporting evidence business records with Ryerson letterhead to establish that during the time in question Ryerson invoiced and sent monthly statements to Body Masters and that Body Masters'

7

purchased orders and issued checks in payment to Ryerson. (*Cline's Memorandum,* p.6, Exhibit C (Part 1-5). He also provides invoices from Tull Metals to Body Masters and Body Masters' checks in payment to Tull issued between 1998 and 2000, pointing to the change in letterhead after that time in support of his argument that Body Masters' business transactions switched from Tull to Ryerson around 2001. (*Cline's Memorandum,* Exhibit A). Cline points out that the change in letterhead was apparently accompanied by a change in customer number, with Body Masters allegedly having one number assigned to it for doing business with Tull and another when it started doing business with Ryerson (*Cline's Memorandum,* p. 5).

Cline also submits the affidavit and the declaration of Glenn Foreman, Body Master's president from 1996 until 2000 and vice-president from 2000 until "present." (*Cline's Memorandum,* Affidavit, *Cline's Opposition,* Exhibit A&C).[4] In his affidavit Foreman states that, based on a review of Body Masters' documents, Body Masters ceased doing business with Tull in 2001 and started doing business with Ryerson. However, in his later declaration, Foreman modifies his previous statement and states that, "*In late 2003, or early 2004,* and prior to the time that the outstanding debt owed by Body Masters at the time of the filing of the bankruptcy proceeding was incurred, the name J.M. Tull disappeared from

---

[4] Tull and Ryerson repeatedly object to the affidavit of Glenn Foreman on the grounds that he was "not involved in any way in purchasing metal for Body Masters." (*Tull's Opposition,* p.2). On March 1, concurrent with filing their Reply Memorandum, Tull and Ryerson filed a Motion to Strike Testimony of Glenn Foreman [Rec. Doc. 48], "[D]ue to its facial lack of basis in Foreman's personal knowledge and its direct contradiction with Foreman's earlier affidavit."(*Tull's Reply Memorandum,* p.3, Fn.2)

the invoices from Ryerson Tull." (*Cline's Opposition,* Exhibit C)(emphasis added). Foreman also states that as of 2001, at the time Body Masters allegedly stopped doing business with Tull it had paid its debt to Tull in full and that the debt at issue was incurred after 2001 to Ryerson. (*Cline's Motion,* Affidavit). In the later Declaration, Foreman also added that "invoices which represented the outstanding debt of Body Masters at the time of the filing of the bankruptcy proceeding...contained only the Ryerson Tull name on the invoices...". *(Cline's Opposition,* Exhibit C).

In opposition, Tull rebuts that "during the relevant time frame" - that is, from 1999 until the present - Ryerson was simply a holding company, "a passive shareholder of Tull Metals," that did no business of its own and "sold metal to no one." (*Tull's Opposition,* p. 2, *Tull's Reply* p. 2). Tull submits the Declaration of Michael Ragsdale, manager of the branch of Tull that allegedly sold metal to Body Masters in 2004 through 2005, stating that Tull, as an operating subsidiary of Ryerson, was the only "entity in the Ryerson Tull family of companies that supplied metal to Body Masters," and that Ryerson does not engage in business operations of its own other than to hold the stock of its operating subsidiaries. (*Tull's Opposition,* p.7-8, Exhibit C). Tull argues, and the Court agrees, that the commercial news articles that Cline attached to his Motion describing Ryerson as the "North America's leading distributor and processors of metals" and further detailing Ryerson's successful metal distributing business are insufficient to raise a genuine issue of material fact to this matter. (*Cline's Opposition,* Exhibit C).

Tull also provides evidence that the Tull Metals name continued to appear in communications with and documents transmitted to Body Masters and on trucks delivering purchased material to Body Masters after 2001, and specifically between 2004 and 2005. (*Cline's Opposition,* Exhibit C.). Ragsdale's Declaration states that sometimes in 2001, Ryerson, as the parent company, changed its marketing practices and introduced the name Ryerson Tull to the business records that Tull transmitted to its customers. (*Id.*). However, according to Ragsdale, the J.M. Tull Metals name and logo continued to appear on the document along with the Ryerson name (*Id.*). Tull presents various business documents bearing both the Tull and Ryerson name, as well as a photograph of a delivery truck with both Ryerson and J.M. Tull Metals name and logo on it. (*Id.,* see attached Exhibits 1-4). Ragsdale also explained that the reason Body Masters was assigned a new account number after 2003 was not because the business changed from Tull to Ryerson, as Cline alleges, but because Tull's Baton Rouge service center closed down and Body Masters account was switched to Tull's New Orleans Service Center. (*Id.*).

Additionally, Tull presents the affidavit of Body Master's purchasing manager, Randy Bertrand, who was involved in issuing purchase orders, receiving shipping and paying invoices and attested that he has direct, personal knowledge regarding the identities of the companies from whom Body Masters purchased materials. (*Tulls' Opposition,* p.7). Bertrand states that he understood that the name Ryerson Tull was introduced simply for marketing purposes, and that even after the logo change, Body Masters was still buying metal from and continuing to do business with Tull. (*Tull's Opposition,* p.7, Exhibit G; *Tull's Reply,* p. 2).

Most significantly, Tull points to a settlement agreement/motion to approve compromise filed by Body Master's in the bankruptcy court in 2005 in which Body Masters named Tull as a debtor, stating that Tull had supplied steel to Body Masters on open account and had recently sold Body Masters certain products. In fact, the settlement agreement even states that for a "brief period post-petition" Tull continued to sell to Body Masters, up until February 24, 2005. (*Tull's Opposition,* pp.3-4, Exhibit F). Tull Metals filed a proof of claim in the bankruptcy proceeding in the amount of $747, 758.05 for outstanding and unpaid invoices dating from September 28, 2004 to January 24, 2005. (*Tull's Opposition,* p.3, Exhibit E). In seeking approval of the jointly filed settlement agreement, Body Masters represented that allowing Tull Metals an unsecured claim against Body Master's estate in the amount of $747, 758.05 was in the best interest of the estate. (*Tull's Opposition,* pp.3-4, Exhibit F). Tull claims it initiated this suit against Cline to enforce his personal guaranty of that debt. (*Tull's Opposition,* p.4).

Cline provides a "List of Creditors Holding 20 Largest Unsecured Claims" that lists Ryerson Tull with a "trade debt" of $473, 639.06. *(Cline's Opposition,* Exhibit C). Even though JM Tull is not named on the List of Creditors, Cline has not provided any material evidence to dispute the admissions of debt to Tull Metals made in the settlement agreement filings in the bankruptcy proceedings. Instead Cline makes general allegations that the settlement agreement involved collusion between Tull and Ryerson to convert the debt of one into the debt of the other and so use the "multiple alleged but unsubstantiated guarantees...to secure an otherwise unsecured debt..." (*Cline's Opposition,* p.2). Although

11

none of the parties have addressed it, the amount of $473, 639.06 listed as due to Ryerson is substantially less than the debt amount stipulated to in the bankruptcy settlement agreement between Tull and Body Masters. Also, Body Masters not only joined in the filing of the bankruptcy settlement motion, but represented that granting *Tull Metals - not Ryerson -* a general unsecured claim was in the best interest of Body Master's estate. Neither the bankruptcy record nor any of the evidence submitted in support of the instant cross-motions for summary judgment indicate that Ryerson and not Tull was the true creditor for this admitted debt, or that Body Masters had an understanding otherwise. (*Tull's Opposition,* Exhibit F).

Based on the extensive factual record before it, as it relates to Cline's Motion for Summary Judgment, the Court finds that Tull and Ryerson have presented evidence to raise a genuine issue of material fact and thus summary judgment in favor of Cline is improper.[5] As for Tull and Ryerson's Motion for Summary Judgment, insofar as it involves the issue of whether the disputed debt is owed to Tull, the evidence before the Court demonstrates that Body Masters owes the amount at issue to Tull. Without weighing the evidence or ruling on Tull's Motion to Strike the Testimony of Glenn Foreman (supra, FN. 2), it is obvious that Foreman's testimony is based on a limited review of select documents, and his testimony is contrary to the admissions made in the bankruptcy proceeding where Body Masters clearly

---

[5] Furthermore, because Cline has not brought forth sufficient evidence to establish that the debt at issue is owed to Ryerson and not Tull, the Court need not address Cline's argument regarding the fact that Tull and Ryerson are separate and distinct entities in attempt to invoke the corporate veil doctrine.

admits to conducting business with Tull and being in debt to Tull as a result of the transactions. Therefore the Court finds that Cline has not provided sufficient evidence to raise a genuine issue of material fact as to whether Body Masters is indebted to Tull for the amount in question to defeat Tull and Ryerson's Motion for Summary Judgment.

The Court now turns to the next issue raised by Tull's Motion for Summary Judgment, of whether the personal guaranty(ees) that Cline executed in favor of Tull is/are enforceable. From the arguments presented, there seems to be some confusion between the parties as to whether Tull is seeking to enforce the 1984 letter guaranty and/or the later executed continuing guarantees. From the face of Tull's Complaint and the exhibits attached thereto it appears that three, practically identical guarantees - a November 30, 1984 Letter Guaranty, a continuing guaranty of December 11, 1984, and a continuing guaranty of March 18, 1991 - may be at issue. The demand letter of January 25, 2005 sent to Cline enclosed a copy of the 1991 guaranty. (*Cline's Motion,* Exhibit A-Exhibit 4). However, Tull expressly states that for the purpose of its Motion for Summary Judgment, while reserving all rights under each guaranty, Tull "relies only upon the November 30, 1984 letter guaranty agreement." (*Tull's Motion,* p.2, FN1).

Tull relies on the written terms of the 1984 letter guaranty itself to argue that an enforceable continuing surety relationship was established.[6] Tull argues that Cline clearly

---

[6] Although Cline disputes whether a contract of surety was actually formed (because he argues that Tull rejected the 1984 letter guaranty), he does not dispute that in the event the Court finds that Tull had not rejected the 1984 letter guaranty, acceptance would result in a contract of suretyship,

13

expressed in writing his intent to satisfy the present and future obligations of Body Masters to Tull without qualifying, conditioning or limiting the obligation in any lawful manner, nor is there any evidence that Cline ever effectively revoked or extinguished the 1984 letter guaranty before Body Masters incurred $747,758.05 debt to Tull. (*Tull's Motion*, p. 6). Tull argues that under the Louisiana Civil Code provisions governing suretyship and the express terms of the 1984 letter guaranty[7] there is no genuine issue of fact that Cline executed a personal continuing guaranty in favor of Tull for all amounts owed to Tull by Body Masters, that Body Masters incurred debt in the amount of $747, 758.05 to Tull while the guaranty was in effect, and that Body Masters has not repaid the debt.[8]

Several Louisiana Civil Code are applicable here,[9] as are the general rules of

---

as claimed by Tull. Under Louisiana jurisprudence, a contract of guaranty is equivalent to a contract of suretyship, and the Louisiana Civil Code provisions governing suretyship are applicable.

[7] Tull presents the Letter Guaranty of November 30, 1984, which states, "I [Cline] hereby guarantee to personally stand good for any payments which Body Masters Sports Industry, Inc. may default on with you during the course and scope of various business transactions." *Supra*, pp.1-2 (*citing Complaint*, p. 9, Exhibit 3); also *Tull's Motion*, Exhibit C; *Tull's Reply*, p. 6, FN. 13 and Exhibit A.

[8] As set out above, Tull provided competent summary judgment evidence establishing that Body Masters owes Tull the amount at issue and that Body Masters has not repaid the debt. (*Tull's Motion*, p.3, Exhibits F & G).

[9] Art. 3035 Suretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so. Art. 3036 Suretyship may be established for any lawful obligation, which, with respect to the suretyship, is the principal obligation. The principal obligation may be subject to a term or condition, may be presently existing, or may arise in the future. Art. 3037 One who ostensibly binds himself as principal obligor to satisfy the present or future obligations of another is nonetheless considered a surety if

contract.[10] In accordance with Article 3038, the 1984 Letter Guaranty was express and in writing, and embodied "an absolute expression of an intent to be bound..." *Jefferson Parish Hosp. Dist. No. 2 v. Harvey* 1992 WL 111205, *1 (E.D.La.,1992)(*quoting State v. Wingerter,* 498 So.2d 125 (La.App. 5th Cir.1986). Although no amount was specified, the language clearly shows that the guaranty was intended to be unlimited, to "stand good for *any* payment(s) which [Body Masters] may default on...during the *course and scope* of *various* business transactions."(*Tull's Motion,* Exhibit C)(*Emphasis added)*; See *Jefferson Parish Hosp. Dist. No. 2,* 1992 WL at *1(*citing Riverside/Terra Corp. v. K & W Agricultural Servs., Inc.,* 540 So.2d 456, 460 (La.App. 1st Cir.), *writ denied,* 541 So.2d 1391 (La.1989).

While Cline admits that he signed the letter,[11] he argues that "any and all guaranties claimed by Tull" are unenforceable because (1) the letter guaranty was rejected by Tull and

---

the principal cause of the contract with the creditor is to guarantee performance of such obligations.

[10]

"A contract of guaranty is subject to the same rules of interpretation as contracts in general. An agreement legally entered into has the effect of law for those who formed them and it must be performed in good faith. The courts must give legal effect to all such contracts according to the true intent of the parties, and this intent is to be determined by the words of the contract when these are clear and explicit and lead to no absurd consequences. All clauses of an agreement are to be interpreted one by the other, giving to each the sense that results from the entire contract. A continuing guaranty is not required to observe technical formalities, but it must embody an expression of intent to be bound. The continuing guaranty as a suretyship agreement is an accessory promise by which the guarantor binds himself to satisfy the obligation if the principal debtor fails to do so." *Riverside/Terra Corp. v. K & W Agr. Services, Inc.,* 540 So.2d 456, *460 (La.App. 1 Cir.,1989)(*citing Guaranty Bank & Trust Co. v. Jones,* 489 So.2d 368 (La.App. 5 Cir.1986)).

[11]

"It is admitted that defendant Cline signed the letter (Exhibit 3 to the Complaint). The letter is in writing and, therefore, the best evidence of its content, provisions and limitations..." (*Cline's Answer,* Rec. Doc. 7).

15

and because (2) Tull extinguished all other guarantees when it relinquished the originals to co-guarantor, Ray Boudreaux.[12] Since neither the 1991 guaranty nor any other guaranty are at issue for the purpose of the instant Motion, the Court will not further address any arguments regarding the validity of any alleged guarantees other than the 1984 letter guaranty.[13]

Cline's only opposition to the validity and enforceability of the 1984 letter guaranty appears to be that it never went into effect. Cline attests that Wayne Hicks, Regional Creditor Manager for J.M. Tull, rejected the letter guaranty during a telephone conversation with Cline in December 1984, and that Tull then sent a personal guarantee form to Cline which did not designate J.M. Tull as the secured party. (*Cline Opposition*, Exhibit B). No further mention is made about the personal guarantee form. Cline's affidavit is self-serving and conclusory; thus, the Court finds that it does not create a genuine issue of material fact.[14]

---

[12] *Supra*, p.3, Fn. 1.

[13] Point of fact, Tull states that Cline did not withdraw or revoke (or even attempt to do so) the executed guarantees until January 23, 2007 when his counsel, Anthony Fazzio sent a letter to Tull's counsel purporting to withdraw or cancel any applicable guaranty. (*Tull's Motion*, p.2, Exhibit E). Cline does not advance any argument regarding the legal effect of the January 23, 2007 letter on the 1984 letter guaranty. Cline explains that the letter withdrawing and canceling any guarantees was sent to Tull's attorney "on advise of counsel and because of the collusion and refusal to produce the original guarantees" after Tull's attorney made written demand for payment based on the 1991 guaranty which allegedly was extinguished by Tull in 1996 (*Cline's Opposition*, pp. 4-5). Even so, the law is clear that an attempted revocation after the debt has been incurred would not release Cline from liability for debt incurred while the guarantee was in effect. La. Civ. Code art. 3061.

[14] *See DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir. 2005)("attempt to create a fact issue as to his knowledge by relying on a conclusory and self-serving affidavit is on unsteady ground.")(*citing BMG Music v. Martinez*, 74 F.3d 87, 91 (5th Cir.1996) (affirming summary judgment for plaintiffs where "the only evidence in support of the defendants' theory is a

Cline has not presented any other supporting evidence regarding the telephone conversation or showing that it resulted in a legal rejection or revocation of the 1984 letter guaranty.

Article 3039 states that "[S]uretyship is established upon receipt by the creditor of the writing evidencing the surety's obligation. The creditor's acceptance is presumed and no notice of acceptance is required." The terms of the guarantee itself did not specifically provide for acceptance/rejection or termination. Jurisprudence is clear that a continuing guaranty remains in effect until revoked by the guarantor, expressly or impliedly, or its effectiveness is extinguished by some other mode recognized by law. See *Bonura v. Christiana Bros. Poulty Co. of Gretna, Inc.*, 336 So.2d. 882 (La. App. 1976). Cline has not presented any competent summary judgment evidence that would demonstrate that Tull rejected Cline's 1984 letter guarantee, or that it was otherwise revoked or extinguished.[15] What's more, Cline has failed to cite any law or jurisprudence in support of his argument that the telephone conversation resulted in a valid rejection. Cline's position that Tull has not produced the original of the guarantees, including the letter guaranty, for Cline to examine his "alleged signature" is irrelevant. (*Cline Opposition*, Exhibit B). The record reflects that

---

conclusory, self-serving statement by the defendant"); *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir.2001) (affirming summary judgment for plaintiff where defendant's only evidence consisted of "self-serving allegations," which "are not the type of significant probative evidence required to defeat summary judgment" (internal quotation marks and citation omitted))).

[15] Cline states that Tull extinguished all of the 1991 guarantees "allegedly provided to them when they relinquished the original to co-guarantor, Ray Boudreaux." (*Cline's Opposition*, p.2, referencing Cline's Affidavit attached as Exhibit B), but does not advance any argument regarding the effect of this alleged extinguishment on the 1984 letter guaranty.

Tull attached both to the complaint [Rec. Doc. 1] and the instant Motion for Summary Judgment [Rec. Doc. 29] photocopies of what appears to be guaranties, including the November 11, 1984 letter guaranty, purportedly signed by Robert Cline on behalf of Body Masters in favor of J.M. Tull Metals, Inc. What's more, Cline admitted signing the 1984 letter guaranty. (*Supra,* p. 13, FN 7).

Based on the evidence before the Court and applying the general principles of contract and suretyship, the Court finds that there is no genuine issue of fact that a continuing guaranty existed in favor of Tull and that Cline is indebted to Tull in the amount of $747, 758. 05, and other such amounts as be set out therein, pursuant to the contract of surety created by the 1984 letter guaranty.

## IV. CONCLUSION

Defendant and consolidated plaintiff, Robert Cline, has entirely failed to meet his burden of proof; he has not offered competent summary judgment evidence that would sustain a finding in his favor on the issues on which he bears the burden of proof at trial. Therefore, Clines' Motion for Summary Judgment [Rec. Doc. 30] will be DENIED.

As J.M. Tull Metals and Ryerson Tull, Inc. have provided ample evidence to demonstrate that the debt at issue was incurred to Tull Metals, and as Cline has not produced competent evidence to raise a genuine issue of fact, summary judgment as to this issue is appropriate. Additionally, as J.M. Tull Metals and Ryerson Tull, Inc. produced summary judgment evidence demonstrating the existence and enforceability of a continuing guaranty

executed by Cline in Tull's favor, and Cline has not presented competent evidence to create a genuine issue of fact pertaining to its validity, summary judgment as to this issue is appropriate. Therefore, the Court finds that Cline is obligated to pay Tull the total unpaid balance of its indebtedness, with interest. However, the 1984 letter guaranty does not provide for the recovery of attorney fees and court costs. Therefore, based on the evidence before the Court and the reasons stated herein, J.M. Tull Metals Company Inc. and Ryerson Tull Inc.'s Motion for Summary Judgment [Rec. Doc. 29] will be GRANTED in part and DENIED in part; and Cline's Motion for Summary Judgment [Rec. Doc. 30] will be DENIED.

COPY SENT:
DATE: 3/23/07
BY: CW
TO: TLM
PJ