**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE-OPELOUSAS DIVISION**

J.M. TULL METALS CO., INC.                    CIVIL ACTION NO. 05-329

VERSUS                                        JUDGE MELANÇON

ROBERT T. CLINE                               MAGISTRATE JUDGE HILL

## MEMORANDUM RULING

Before the Court are Robert T. Cline's ("Cline") Motion to Vacate Decisions on Motions for Summary Judgment Pursuant to Fed. R. Civ. P. 60(b) and Memorandum in Support thereof [Rec. Doc. 64], J.M. Tull Metals Co., Inc.'s ("J.M. Tull") Memorandum in Opposition to Cline's Motion [Rec. Doc. 68], Cline's Reply Memorandum [Rec. Doc. 84], and Cline's Response [Rec. Doc. 95] to the Court's January 8, 2008 Minute Entry [Rec. Doc. 88].  For the reasons that follow, Cline's Motion [Rec. Doc. 64] will be **DENIED**.

### I.    BACKGROUND

On March 22, 2007, the Court issued a Memorandum Ruling [Rec. Doc. 58] and Judgment [Rec. Doc. 59] in favor of J.M. Tull and against Cline in the amount of $747,758.05.  The facts of the underlying dispute which led to the decision are exhaustively detailed in the Court's prior opinion and will not be repeated here.  Following the Court's ruling, Cline filed a Notice of Appeal [Rec. Doc. 61].  Thereafter, on April 30, 2007, more than a month after the Court's ruling and two weeks subsequent to the Notice of Appeal, Cline filed the instant motion [Rec. Doc.

64] seeking relief from the Judgment [Rec. Doc. 59] due to "newly discovered" evidence.[1]    In particular, Cline seeks to present evidence which allegedly demonstrates that Michael Ragsdale ("Ragsdale"), an employee of J.M. Tull, materially misrepresented the nature of Ryerson Tull, Inc.'s ("Ryerson") business. Cline avers that, as this misrepresentation was crucial the Court's March 22, 2007 decision, he is entitled to relief from the Judgment [Rec. Doc. 59] under Federal Rules of Civil Procedure 60(b)(2) and/or 60(b)(3).

In his affidavit submitted in support of J.M. Tull's Memorandum in Opposition to Cline's Cross Motion for Summary Judgment [Rec. Doc. 34], Ragsdale averred that:

> Ryerson Tull is merely a holding company.  It does not and has not ever, during the period from 1999 to the present, engaged in any business operations of its own, other than to hold the stock of its operating subsidiaries.  Ryerson Tull does not and has not ever, during the period from 1999 to the present, sold metal to anyone.  Because only the subsidiaries of Ryerson Tull have sold metal during the period from 1999 to the present, Ryerson Tull could not have sold Body Masters metal or any other product at any time during that period.

> *Declaration of Michael Ragsdale* [Rec. Doc. 34-4], pg. 2.

In its Memorandum Ruling [Rec. Doc. 58], the Court referenced this declaration as one of pieces of evidence supporting J.M. Tull's position. *Memorandum Ruling* [Rec.

---

[1]    Due to the fact that Cline had already submitted his Notice of Appeal [Rec. Doc. 61], the Court issued an Order [Rec. Doc. 66] stating that it lacked jurisdiction to consider Cline's Motion [Rec. Doc. 64].  On September 20, 2007, the United States Court of Appeal for the Fifth Circuit remanded the case to this Court [Rec. Doc. 77] for consideration of the motion.  Upon receipt of the Fifth Circuit's order, the Court set Cline's Motion [Rec. Doc. 61] for hearing [Rec .Doc. 87].

Doc. 58], pg. 9-10.  However, Cline now submits documents from a North Carolina bankruptcy proceeding purporting to show that Ryerson did, in fact, engage in the sale of metal.

Cline argues that this evidence, while in existence and public record prior to the issuance of the judgment, could not have been discovered, even in the exercise of due diligence, before the Court's decision.  In an effort to clarify the reasons for delay in discovery, on January 8, 2008, the Court issued a Minute Entry [Rec. Doc. 88] directing Cline to submit a memorandum setting forth why the evidence could not have been discovered and submitted sooner.  In his Response [Rec. Doc. 95], Cline stated that, in March of 2007, prior to the issuance of the Court's Memorandum Ruling and Judgment, Glen Foreman ("Foreman"), an employee of Body Masters, noticed a reference to Ryerson as a "critical vendor" in an email containing a North Carolina Bankruptcy Court docket number.  "Because neither of Mr. Cline's attorneys had access to [PACER], Mr. Foreman requested Mr. Thomas St. Germain, Body Masters' bankruptcy attorney, obtain whatever documents he could obtain regarding the bankruptcy proceeding under the docket number."  *Cline's Response* [Rec. Doc. 95], pg. 3.  As a result of the alleged lack of access to PACER, Cline's attorneys did not receive the documents until late in the afternoon on March 22, 2007 - the date of the Court's Memorandum Ruling and Judgment.

Upon receiving notice of the Court's decision, Cline and his attorneys voluntarily ceased review of the bankruptcy court documents and did not resume

review until April 15, 2007.  It is at this time that the "new" evidence was "fortuitously" discovered.  Fifteen days later, Cline filed the instant motion seeking relief from the judgment based on this "new" evidence and alleging fraud on the part of J.M. Tull and Ragsdale.

## II.  LAW & ANALYSIS

Federal Rule of Civil Procedure 60(b) allows a court to grant a party relief from a final judgment, order, or proceeding in certain limited circumstances.  Fed. R. Civ. P. 60(b).  The purpose of this rule is to balance the principle of finality of a judgment with the interest of the court in seeing that justice is done in light of all the facts. *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 638 (5th Cir. 2005) (*citing Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1991)).  "[T]he decision to grant or deny relief under Rule 60(b) lies within the sound discretion of the district court."  *Id.*, *quoting Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996).  Cline pleads two bases of relief in his Motion to Vacate [Rec. Doc. 64]: (1) "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)," and (2) "fraud [ . . . ], misrepresentation, or other misconduct of an adverse party."  Fed. R. Civ. P. 60(b)(2) & 60(b)(3).  Each of the arguments will be addressed in turn.

### A.   "Newly discovered evidence" - Rule 60(b)(2)

"Facts are stubborn things; and whatever may be our wishes, our inclinations, or the dictates of our passions, they cannot alter the state of facts and evidence."
*John Adams, Second President of the United States of America*

Rule 60(b)(2) allows a court to relieve a party from a final judgment based on "newly discovered evidence that which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2).[2]  A successful Rule 60(b)(2) motion demonstrates (1) that the movant exercised due diligence in obtaining the information; and (2) that the evidence is material and controlling and clearly would have produced a different result if present before the original judgment. *Id.* at 639, *citing Goldstein v. MCI WorldCom*, 340 F.3d 238, 257 (5th Cir. 2003).  In addition to these two general requirements, district courts have been cautioned that a judgment should not be disturbed if the newly discovered evidence is ". . . merely cumulative or impeaching and would not have changed the result." *Hesling*, 396 F.3d at 638 (*citing Trans Miss. Corp. v. United States*, 494 F.2d 770, 773 (5th Cir. 1974)). In this case, not only is the evidence "merely cumulative and impeaching," Cline failed to show that he exercised due diligence in obtaining the information or that the "new" evidence would be controlling or would have led to a different result.

1.   *In the exercise of due diligence, Cline could have discovered the "newly discovered" evidence <u>before</u> the delay for new trial expired.*

A motion under Rule 60(b)(2) presupposes that the evidence sought to be

---

[2]   Effective December 1, 2007, Federal Rule of Civil Procedure 60(b)(2) states that relief may be granted based on "newly discovered evidence that, with *reasonable* diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2) (*emphasis added*).  The prior version of the rule, as quoted above, is applicable to this motion as the motion was filed well in advance of the December 1, 2007 effective date of the rules.  However, according to the comments accompanying the new Rule 60(b)(2), the changes ". . . are intended to be stylistic only."  Thus, the analysis under either version of the rule would be the same.

introduced was in existence at the time of the judgment, but was not discovered until after the judgment and delay for new trial.  *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 158 (5th Cir. 2004) (*quoting Longden v. Sunderman*, 979 F.2d 1095, 1102-03 (5th Cir. 1992)).   It is undisputed that the records of the North Carolina bankruptcy proceeding existed, and were public record, prior to the Court's March 22, 2007 Memorandum Ruling [Rec. Doc. 60] and Judgment [Rec. Doc. 59].  However, Cline argues that, despite the exercise of due diligence, this evidence could not have been discovered before April 15, 2007.

According to Cline's Response to the Court's January 8, 2008 Minute Entry [Rec. Doc. 95], the delay was caused, at least in part, "[b]ecause neither of Mr. Cline's attorneys had access to [PACER]."  *Cline's Response* [Rec. Doc. 95], pg. 3.  The Public Access to Court Electronic Records ("PACER") system is an electronic public access service that allows users to obtain case and docket information from every Federal Appellate, District, and Bankruptcy Court in the United States via the internet.[3]  While each court maintains its own database with case information, a single PACER account grants a user access to all courts.  Users are only required to have access to a personal computer, the internet, and javascript enabled web browser.  The system is available days, nights, and weekends, and web access to PACER costs only $0.08 per page accessed.[4]  As the name explicitly states, this

---

[3]      *What is PACER?*, http://pacer.uscourts.gov/pacerdesc.html.

[4]      Users are only billed if the incur $10 or more in access charges per year.

service is available to all members of the public.  Thus, given the abundant availability of PACER access, the Court finds no merit in Cline's argument that the delay was caused, in any part, because his attorneys did not have access to PACER.

Further, a review of the docket sheet in this matter reveals that at least one of Cline's attorneys, Jefferson Moss, *did* have access to PACER and/or the Court's "Case Management / Electronic Court Files" (CM/ECF) system at the time of "fortuitous discovery" of the evidence.  On October 19, 2006, using the CM/ECF system, Moss electronically filed a *Motion for Anthony Fazzio to Enroll as Counsel of Record* [Rec. Doc. 23].  *See Also Cline's Motion for Summary Judgment* [Rec. Doc. 30], electronically filed by Moss on February 2, 2007; *Cline's Memorandum in Opposition to Tull's Summary Judgment* [Rec. Doc. 36], electronically filed by Moss on February 21, 2007; *Cline's Response to the Court's March 1, 2007 Order* [Rec. Doc. 55], electronically filed by Moss on March 16, 2007; and *Cline's Memorandum in Opposition to Tull's Motion to Strike Testimony of Glenn Foreman*, electronically filed by Moss on March 16, 2007.  Each of the afore referenced  documents were filed well before the Court's March 22, 2007 Memorandum Ruling [Rec. Doc. 58] and Judgment [Rec. Doc. 59] and  demonstrate not only that Cline's attorneys had access to PACER, but also that they possessed a working knowledge of the system and simply failed to utilize it.  Such a failure evinces a lack of due diligence in contravention of the requirements of Rule 60(b)(2).

Were the Court to excuse the delay caused by the attorneys' purported lack of PACER access, a finding that Cline and his attorneys did not exercise due diligence is still unavoidable. Cline admits that either he, his attorneys, or his representatives were in possession of the documents at either the time of the issuance of the Memorandum Ruling and Judgment or immediately thereafter. *Cline's Response* [Rec. Doc. 95], pg. 3. *A fortiori*, then, Cline was in possession of the documents at the expiration of the delay for a new trial. The United States Court of Appeal for the Fifth Circuit has held that this fact alone is enough to deny the movant's motion. *See Longden*, 979 F.2d at 1103 (*citing Ky. Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 391 (5th Cir. 1977); *Johnson Waste Materials v. Marshall*, 611 F.2d 593, 598 n.9 (5th Cir. 1980) (distinguishing between evidence newly discovered and evidence newly presented)). Despite having possession of the documents, Cline chose to cease review until over three weeks later. Accordingly, the Court is not persuaded that Cline exercised due diligence in presenting the "new" evidence to the Court.

2.   *The evidence sought to be admitted is merely cumulative and impeaching and would not have changed the ultimate judgment of the Court.*

The second requirement of a successful Rule 60(b)(2) motion is that the newly discovered evidence must be, "[ . . . ] material and controlling and clearly would have produced a different result if present before the original judgment." *Hesling*, 396 F.3d at 638 (*quoting Goldstein*, 340 F.3d at 257). The "new" evidence that Cline alleges

will be controlling relates solely to the types of business in which Ryerson is engaged.  These documents are merely cumulative in that Cline has already put forth evidence in his Motion for Summary Judgment [Rec. Doc. 30] and Memorandum in Opposition to J.M. Tull's Motion for Summary Judgment [Rec. Doc. 36] purportedly showing that Ryerson was engaged in the sale of metal.  Thus, the "newly discovered" evidence merely adds to the evidence already in the record.  Further, the sole stated purpose of the evidence is to impeach the affidavit of Ragsdale.  Accordingly, this evidence is not the type contemplated by Rule 60(b)(2).

Secondly, the "newly discovered" evidence is not controlling and would not have changed the ultimate outcome of this case.  It is true that the Court did place some weight on the affidavit of Ragsdale.  However, the Court's Memorandum Ruling [Rec. Doc. 58] clearly sets forth that the most damning evidence against Cline was the settlement agreement/motion to approve compromise filed by Body Masters in the bankruptcy court.[5]  In addition to the Ragsdale affidavit and the settlement agreement, a substantial amount of other evidence also weighed in favor of granting summary judgment in favor of J.M. Tull.[6]  Thus, were the Court to disregard the

---

[5]   "**Most significantly**, Tull points to a settlement agreement/motion to approve compromise filed by Body Master's in the bankruptcy court in 2005 in which Body Masters named Tull as debtor, stating that Tull had supplied steel to Body Masters on open account and had recently sold Body Masters certain products.  In fact, the settlement agreement even stated that for a 'brief period post-petition' Tull continued to sell to Body Masters, up until February 24, 2005."  *Memorandum Ruling* [Rec. Doc. 58], pg. 11 (emphasis added).

[6]   Such evidence includes, but is not limited to, the affidavit of Body Masters' purchasing manager, Randy Bertrand, and J.M. Tull's Proof of Claim filed in Body Masters' bankruptcy proceeding.

Ragsdale affidavit, the ultimate result would be the same - Body Masters owed a debt to J.M. Tull and Cline was personally responsible for that debt.[7]  As the evidence is not controlling on the issues presented, the Court must deny Cline's Rule 60(b)(2) motion.

B.   *"Fraud [ . . . ], misrepresentation, or other misconduct" – Rule 60(b)(3)*

> "A lie gets halfway around the world before
> the truth has a chance to get its pants on."
> *Winston Churchill, Former Prime Minister of the United Kingdom*

When a judgment is based upon "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party," Rule 60(b)(3) allows a party to seek relief from that judgment.  Fed. R. Civ. P. 60(b)(3).  In order to prevail under this rule, a movant must establish, by clear and convincing evidence, (1) that the adverse party engaged in fraud or other misconduct, **and** (2) that the misconduct prevented the moving party from fully and fairly presenting his case.  *Hesling*, 396 F.3d at 641 (*citing Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place*, 62 F.3d 767, 772 (5th Cir. 1995)); *and Lee*, 379 F.3d at 156 (*citing Montgomery v. Hall*, 592 F.2d 278, 278-79 (5th Cir. 1979)).   Unlike Rule

---

[7]   The primary thrust of the "new" evidence and the Motion for Reconsideration is that Michael Ragsdale lied about the nature of Ryerson's business.  However, a careful reading of the Court's Memorandum Ruling [Rec. Doc. 58] reveals that the Court did not find that Ryerson was not engaged in the business of selling metal.  Instead, the Court merely found that the debt at issue was owed to J.M. Tull, not Ryerson.  This is best illustrated by Footnote 5 on page 12 of Memorandum Ruling which states "Furthermore, because Cline has not brought forth sufficient evidence to establish that the debt at issue is owed to Ryerson and not Tull, the Court need not address Cline's argument regarding the fact that Tull and Ryerson are separate and distinct entities in attempt to invoke the corporate veil doctrine."  As the "new" evidence does not speak to the cental tenet of the Court's Ruling, it is irrelevant and not controlling.

60(b)(2), Rule 60(b)(3) does not require that the information withheld be such that it can alter the outcome of the case as Rule 60(b)(3) "is aimed at judgments which were unfairly obtained, not at those which were factually incorrect." *Hesling*, 396 F.3d at 641.  The misconduct contemplated by Rule 60(b)(3) may be shown by evidence that the opposing party withheld information called for by discovery or willfully committed perjury. *Lee*, 379 F.3d at 156-57. In this case, Cline fails to make the necessary showing for relief.

There is no contention in the record that J.M. Tull withheld any documents or information called for by discovery.  Accordingly, if Cline is to prevail on this motion, the alleged fraud must have stemmed from Ragsdale's alleged misstatement in his affidavit.  However, assuming, *arguendo*, that the Court accepted Cline's argument that Ragsdale perjured himself in his affidavit, this alone is insufficient to warrant a new trial.  Cline must also prove, by clear and convincing evidence, that this perjury prevented him from fully and fairly presenting his case.  Cline cannot fulfill this second requirement as he not only had the opportunity to, but, as already discussed *supra*, did in fact, present evidence allegedly showing that, contrary to the affidavit of Ragsdale, Ryerson did engage in the purchase and sale of metal.  As Cline had an opportunity to fully present his case, his motion must fail.[8]

---

[8]     As the ultimate result remains unchanged, the Court need not address whether the statements made by Ragsdale in his affidavit were untruthful.  If Ragsdale's statements are, in fact, untruthful, such conduct may subject Ragsdale to charges of perjury or making a false statement, and possibly expose J.M. Tull's attorneys to disciplinary action by the Louisiana State Bar Association and this Court.

### III.   CONCLUSION

At least one Court has stated that the requirements for a successful Rule 60(b) motion presents a "nearly insurmountable hurdle," *see Jones v. Phipps*, 39 F.3d 158, 162 (7th Cir. 1994), and the arguments Cline advances in his Motion to Vacate Decisions on Motions for Summary Judgment Pursuant to Fed. R. Civ. P. 60(b) [Rec. Doc. 64] fall far short of clearing this high bar.  The Court does not express an opinion on whether or not Ragsdale perjured himself as it is not relevant to the ultimate disposition of Cline's motion.  The reality is that the evidence offered was available to Cline before final judgment was rendered or before the expiration of the Rule 59 time limit, was merely cumulative or impeaching, would not have changed the outcome of the case, and did not deprive Cline of the opportunity to fully and fairly present his arguments.   Accordingly, Cline's Motion to Vacate Decisions on Motions for Summary Judgment Pursuant to Fed. R. Civ. P. 60(b) [Rec. Doc. 64] will be **DENIED**.